Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



FILED

Sep 09 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**VALERIE K. BOOTS**
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JERRY WILLIAMS,                               )
                                              )
    Appellant-Petitioner,           )
                                              )
      vs.                        )    No. 49A02-1302-PC-133
                                              )
STATE OF INDIANA,                             )
                                              )
    Appellee-Respondent.            )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-0906-PC-56343

**September 9, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Jerry Williams appeals the fifty-five-year aggregate sentence imposed by the post-conviction court after the court granted his petition for post-conviction relief in part. Williams raises a single issue for our review, namely, whether the court abused its discretion when it sentenced him. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Williams' original convictions were stated by this court on direct appeal:

> The evidence most favorable to the convictions reveals that in the early morning hours of September 29, 2007, T.R. encountered three men on the street while walking home from a friend's house in Indianapolis. The three men introduced themselves as "Slim," "Little D," and "Shorty." "Slim" was Williams, "Little D" was Dionne Stewart, and "Shorty" was William Baxter. T.R. did not tell the men her real name at this time. After making various comments to T.R., including telling her that she was "cute" and suggesting that they all "hang out" together, T.R. agreed to walk with the men in an opposite direction from her house.
>
> Stewart then encouraged T.R. to ingest some cocaine, and she did so, after receiving assurances that it was "for free." T.R. followed Stewart to a street between two abandoned houses, where he kissed her. After T.R. told Stewart that he was "moving too fast," Stewart unzipped his pants and demanded that T.R. touch his penis. T.R. refused to do so and tried to start walking back to her house.
>
> The three men followed after T.R., with Stewart or Baxter yelling that she was "bulls* * *ing" and taking their "stuff." Williams, however, told T.R. that his friends were the ones "bulls* * *ing." T.R. took this as a sign that Williams was taking her side over the other two men, and she felt comfortable enough to shake Williams's hand and tell him her real name. After T.R. reiterated that she was going to walk home, Williams told her that he knew a shortcut to where she was headed.
>
> The shortcut, however, led to an alley behind a garage. When T.R. and the three men reached that location, Williams said, "now." Stewart and Baxter grabbed T.R., and she threatened to scream and yell. Williams then

2

told Stewart and Baxter, "Knock the b* * * * out." Stewart and Baxter began hitting T.R. on the back of her head, and she finally pleaded that she would "do anything" as long as they didn't knock her out. The men forcibly removed T.R.'s shirt and pants, and Williams announced that "he was going to go first." Williams then forced T .R. to perform oral sex on him until he ejaculated.

Stewart then forced T.R. to perform oral sex on him while Baxter had forcible vaginal intercourse with her. After a period of time, the two men switched positions. They also both forced their penises into T.R.'s anus during the attack.

While Stewart and Baxter were assaulting T.R., Williams stood about ten feet away and watched. At one point, T.R. begged Williams directly to "make it stop," telling him that she was a mother and a human being. Williams refused to take any action. After Stewart and Baxter ejaculated, Williams threw T.R. her jacket and said to the other two men, "Come on." As they were leaving, Stewart took T.R.'s cell phone and keys from her and punched her in the face when she begged him not to take them.

T.R. eventually was able to find someone to call the police for her. DNA analysis revealed the presence of seminal fluid on T.R.'s clothes that matched the DNA of Stewart, Baxter, and Williams. T.R. also identified the three men as her attackers from photo arrays.

After amendment, the State charged Williams with five counts of Class A felony criminal deviate conduct, one count of Class A felony rape, one count of Class A felony robbery, and one count of Class C felony battery. After a jury trial held on May 10-11, 2011, Williams was convicted of five counts of Class A felony criminal deviate conduct and one count of Class C felony battery; he was acquitted of the rape and robbery charges. At sentencing the trial court merged the battery conviction into one of the criminal deviate conduct convictions. . . .

Williams v. State, No. 49A02-1006-CR-708, at *1-*2 (Ind. Ct. App. Feb. 14, 2011) (citations and footnote omitted). The court sentenced Williams to an aggregate term of seventy years imprisonment. On direct appeal, Williams challenged only the sufficiency of the evidence underlying his convictions. We affirmed.

3

On June 12, 2012, Williams filed his amended petition for post-conviction relief. The court held a hearing on Williams' petition in August of 2012. On October 5, 2012, the court granted Williams' petition in part, holding that four of his Class A felony convictions subjected him to double jeopardy. Accordingly, the court reduced those convictions to Class B felony convictions and resentenced Williams to an aggregate term of fifty-five years. This appeal ensued.

## DISCUSSION AND DECISION

Williams asserts that the trial court abused its discretion when it sentenced him. "[S]entencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds on reh'g, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." Id. (quotation omitted).

As our supreme court has explained:

One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

Because the trial court no longer has any obligation to "weigh" aggravating and mitigating factors against each other when imposing a

4

sentence . . . a trial court can not now be said to have abused its discretion in failing to "properly weigh" such factors. . . .

Id. at 490-91 (citations omitted).

In its sentencing statement, the post-conviction court stated as follows:

Okay, well in doing the sentencing, the Court again would cite the same aggravating factors that I did previously in the sense that there were multiple defendants involved in this act. There were multiple sexual acts where the [victim] was raped and then was . . . forced to engage in multiple oral sex and anal sex activit[ies] in which the Defendant either was an active participant or was in a position to watch his co-defendants take turns doing oral and anal sex on the victim and was in a position where he could have stopped it and did not. . . . [T]here weren't any mitigating circumstances . . . . [T]he Defendant did have prior felony convictions prior to the sentencing in this case. He did have a robbery conviction in February of 2009. He had a reckless homicide conviction in August of 2009[,] which were both crimes of violence.

Transcript at 9-10. The court then enhanced Williams' sentence for his Class A felony conviction to forty years and enhanced each of Williams' sentences for his Class B felonies to fifteen years. See Ind. Code §§ 35-50-2-4, -5. The court ordered two of the sentences on the Class B felony convictions to run concurrent with each other but consecutive to Williams' sentence for the Class A felony,[1] for an aggregate term of fifty-five years.

On appeal, Williams first argues that the post-conviction court abused its discretion when it sentenced him because it stated that "the [victim] was raped," and Williams was acquitted of the charge of rape. See Appellant's Br. at 7. In his reply brief, Williams clarifies that:

The jury found him guilty of four acts of criminal deviate conduct as an accomplice, for his "aiding, inducing or causing" his co-defendants to

---

[1] The court ordered the sentences for the other two Class B felony convictions to run concurrent with each other and Williams' sentence for the Class A felony conviction.

5

subject the victim to criminal deviate conduct. The fact that the jury did not correspondingly find Williams guilty on the rape charge as an accomplice means the jury found he was not criminally culpable for his co-defendants' acts in raping the victim.

Reply Br. at 1 (citation omitted). Thus, Williams concludes, the trial court erred in relying on the rape of the victim to enhance Williams' sentence.

We cannot agree with Williams' reading of the post-conviction court's sentencing statement. Again, the court stated, in relevant part:

There were multiple sexual acts where the [victim] was raped and then was . . . forced to engage in multiple oral sex and anal sex activit[ies] in which the Defendant either was an active participant or was in a position to watch his co-defendants take turns doing oral and anal sex on the victim and was in a position where he could have stopped it and did not. . . .

Transcript at 9-10. It is clear from the full context of the court's sentencing statement that the court was describing the seriousness of the nature and circumstances of Williams' offenses, which included his participation in—or his standing idly by and doing nothing to prevent—the forcible and nonconsensual sexual attack on T.R. The seriousness of an offense "has long been held a valid aggravating factor." Anglemyer, 868 N.E.2d at 492.

Williams also argues that the trial court "improperly used the elements of the offenses for which Williams was convicted to aggravate his sentence." Appellant's Br. at 7. Again, we cannot agree. The court merely described the nature and circumstances of the offenses, including the fact that Williams stood idly by during part of the attack. That fact is neither an element of any of the offenses nor an improper aggravator. See Jones v. State, 705 N.E.2d 452, 454 (Ind. 1999). Further, the court also noted that Williams had a

criminal history consisting of two prior felonies, each of which was a crime of violence. Accordingly, we cannot say that the trial court abused its discretion when it sentenced Williams.

Affirmed.

MATHIAS, J., and BROWN, J., concur.